**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 08-66-DLB**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**VS.**                  **MEMORANDUM OPINION AND ORDER**

**RONALD PALMER**                                          **DEFENDANT**

********************************

### I.   Introduction

This matter is before the Court upon Defendant's motion to withdraw guilty plea (Doc. # 41).  The United States having filed its response to the motion (Doc. # 48), and no reply having been filed and the time for filing any reply having now expired, the motion is ripe for review.[1]  Upon reviewing the written briefs, the Court concludes that oral argument is not necessary to adjudicate the motion.  For the reasons that follow, the motion is **denied**.

### II.   Relevant Facts[2]

On two dates in October, 2007, Defendants Savannah Myers and Ronald Palmer robbed two federally insured banks in Northern Kentucky.  The modus operandi for both robberies was identical.  Defendant Myers drove the get away vehicle and waited outside

---

[1]  Defendant was ordered to file his reply not later than November 13, 2009 (Doc. # 42).

[2]  These facts were gleaned from Defendant's written plea agreement, oral admissions made by him during the April 2, 2009 plea colloquy with the Court, information contained in his presentence investigation report (PSR), and the report of Dr. Ed Connor.

while Defendant Palmer went inside the bank, armed with a handgun, and demanded money from a teller at gunpoint. Once Palmer had the money, he exited the bank, got into the vehicle, and both defendants fled the scene.

More particularly, during the October 11, 2007, Central Bank robbery, Palmer pointed a Glock handgun at the teller, demanded money, and was provided $4,347 by the teller. During the October 26, 2007, Heritage Bank robbery, Palmer pointed a Glock handgun at the teller, demanded money, and was provided approximately $24,025 by the teller. Defendant was 34 years old at the time of the robberies.

Although Defendant dropped out of high school in the tenth grade, he obtained his GED in 1991 and attended college in California for a brief time. According to his PSR, Defendant had a serious weightlifting accident in 1991 as a result of a dumb bell weight falling and striking him in the head. Defendant had surgery to remove a blood clot from his brain. Defendant reported to probation that the surgery was successful. However, Defendant reported that he has lingering memory and speech problems and on occasion, severe headaches and vision problems. He also suffers from migraine headaches on occasion.

After his 1991 surgery, Defendant experienced episodes of depression, and was prescribed medications to treat those symptoms. Defendant causally links his depression to his head injury. According to Dr. Connor's findings, although Defendant functions slightly below the average range of intelligence, he is much more intelligent than his IQ scores reflect.

In 2005, Defendant developed an addiction to steroids. Due to his steroid addiction, Defendant reported to probation that he became addicted to other substances, including

2

Ultram, Vicodin, Percocet, and Fentanyl patches.   During his presentence interview, Defendant acknowledged that he had not used any of those substances since February, 2008, mostly due to his incarceration.

Defendant's work history is sporadic.  The most stable job he has held was working as a personal trainer for approximately four years (from 2002-2006) in Indianapolis, Indiana.   Defendant was at one time an accomplished weightlifter who obtained a significant level of professional acclaim and recognition.  According to the sealed report of Dr. Ed Connor (Doc. # 43-1), he began to use steroids in an attempt to revive his weightlifting career.  Dr. Connor opines that Defendant's steroid use "negatively impacted his physical and psychological well-being."   Defendant reported to Dr. Connor that he attempted suicide in May, 2007, a point he failed to mention to probation during his presentence interview.

### III.   Analysis

The withdrawal of a guilty plea prior to sentencing is a matter "within the broad discretion of the district court," *United States v. Weldon*, 541 F.Supp. F.2d 890, 897 (E.D. Ky. 2006), *aff'd*, 275 Fed.App'x. 462 (6th Cir. 2008) (unpublished), and is governed by Rule 11 of the Federal Rules of Criminal Procedure.  Rule 11(d) provides the circumstances under which a defendant may withdraw a guilty plea.  Rule 11(d) provides, in relevant part:

> **(d) Withdrawing a Guilty ... Plea.**  A defendant may withdraw a plea of guilty ...:
> **(1)** before the court accepts the plea, for any reason or no reason; or
> **(2)** after the court accepts the plea, but before it imposes sentence if:
> ...
> > **(B)** the defendant can show a fair and just reason for requesting the withdrawal.

3

In this case, since Defendant's guilty plea was accepted by the undersigned on April 2, 2009, the standard set forth in Rule 11(d)(2)(B) applies, that is, Defendant must show a fair and just reason for requesting the withdrawal.

The purpose of Rule 11(d) "is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (internal citation and quotation marks omitted). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). *quoting United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

In considering Defendant's motion to withdraw his guilty plea, the Sixth Circuit has identified several factors which the Court must consider.  These factors include – (1) the timeliness of the motion, (2) any reason for untimeliness, (3) assertion of innocence, (4) the circumstances surrounding the guilty plea, (5) the background of the defendant, (6) the defendant's exposure to the criminal justice system, and (7) prejudice to the government if the motion is granted.  *Weldon*, 541 F. Supp. 2d at 897 (*citing United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994)).  These factors "are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027.  The defendant has the burden of establishing the existence of a fair and just reason supporting the withdrawal of the guilty plea. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998).  Upon reviewing each of these factors, individually and collectively, the Court concludes that Defendant's motion

4

should be denied.

### 1.    The Timeliness of the Motion

Consideration of this factor favors denial of Defendant's motion.  Defendant's guilty plea was entered on April 2, 2009.  On October 30, 2009, a few days shy of seven (7) months later, Defendant moved to withdraw his plea.  Based on the date of his scheduled sentencing (November 6, 2009), the motion was filed only one week before sentencing.

The Sixth Circuit has consistently held that "a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time."  *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).  The Sixth Circuit has held that thirty-five days after a guilty plea is a substantial amount of time, *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987), and that seventy-five days is a substantial amount of time that warrants denial of a motion to withdraw.  *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004).

In this case, Defendant did not file his motion until more than six months after the Court accepted his plea and just one week before sentencing.  This lengthy delay weighs heavily against granting the motion to withdraw.

### 2.    Reason for Untimeliness

In his motion, defense counsel states that Defendant discussed with him withdrawing from his plea since mid to late April.  However, according to defense counsel, he advised Defendant not to withdraw his plea at that time.  Because counsel had questions about Defendant's residual physical and mental issues, he wanted to obtain an evaluation by Dr. Connor before deciding to file a motion to withdraw on Defendant's behalf.  Defense counsel also wanted to conduct research regarding the mixture of steroids and various pain

5

medications Defendant used, and the possible residual effects from that combination.

According to defense counsel, in late-September/early-October, 2009, defense counsel and Defendant began discussing the results of his research and the findings of Dr. Connor. The end result of these discussions was defense counsel's belief that Defendant's prior stated desire to withdraw his guilty plea was well thought out despite his residual mental and physical limitations. Put simply, defense counsel places any blame on failing to file the motion earlier squarely at his own feet.

Defense counsel's attempt to deflect the blame himself, rather than his client, is unavailing for several reasons. First, if Defendant truly harbored second thoughts about entering his guilty plea and expressed a desire to withdraw from his plea since mid to late April, 2009, there was nothing preventing him from filing a motion to that effect earlier, and advising the Court he wanted to be sure Defendant knew exactly what he was doing by requesting withdrawal. By waiting to file the motion until the eleventh hour and only after being advised by the prosecutor that a substantial assistance motion would not be forthcoming, it does give the appearance that the motion was filed in an attempt to obtain a better result. Second, a careful review of Dr. Connor's report reveals no definitive conclusion on the residual physical and mental limitations caused by the combination of steroids and prescription medications Defendant used. Although defense counsel avers that his research revealed such an indication, it is unclear how he reached that conclusion. Third, at the time Defendant entered his guilty plea, he had not mixed steroids and pain medications for at least 14 months. Fourth, because Dr. Connor's report was issued in July, 2009, the motion to withdraw could have been filed at that time. Although it would have still been untimely, it would not have been nearly as untimely as the present motion.

6

Lastly and most significantly, even giving Defendant the benefit of this factor, consideration of the other factors leads to the conclusion that there is not a fair and just reason for the withdrawal in this instance.  Simply stated, even if the Court were to conclude that defense counsel's concerns were well-founded and justified the late filing of the motion, there is still no legitimate basis for the withdrawal of the guilty plea in this instance.

### 3.    The Assertion of his Innocence

In addressing this factor, Defendant boldly states that he "has maintained his innocence throughout, with limited exception."  The exception, states Defendant, was his admissions during his guilty plea.

During his plea colloquy with the Court, Defendant admitted that the Government could prove the facts set forth in paragraph three of his plea agreement beyond a reasonable doubt (Doc. # 44 at p. 32).  Defendant candidly and unequivocally admitted his role in both bank robberies.  More specifically, Defendant acknowledged that after they pulled up to each bank, he went inside, brandished the firearm and demanded money, and then left the bank after the money was given to him.  *Id.*

Although Defendant did not admit his guilt until approximately three weeks before the case was scheduled for trial, his decision to plead guilty is not unlike those made by hundreds, if not thousands, of defendants every year in federal and state courts throughout the United States.  Decisions to plead guilty late in the process are relatively routine and no special significance shall be afforded to a Defendant who enters his guilty plea in that fashion.

Moreover, a few days after entering his guilty plea, Defendant participated in a proffer session with law enforcement during which he once again admitted to the two

7

Northern Kentucky bank robberies, as well as other bank robberies in Indiana, Missouri, and Ohio. Other than the instant motion, there has never been any assertion of innocence by Defendant which would compel the Court to conclude that consideration of this factor favors granting Defendant's motion.[3]

To the contrary, for all of these reasons, consideration of this factor weighs heavily in favor of denying the motion to withdraw guilty plea.

### 4.        The Circumstances Surrounding the Guilty Plea

Defendant initially entered a plea of not guilty at his February 19, 2009 arraignment. After the discovery was provided to him and he had the opportunity to review that discovery with his attorney, Defendant decided to change his plea from not guilty to guilty, filing a motion for rearraignment on March 31, 2009. On April 2, 2009, Defendant entered a guilty plea to Counts 2 and 5 of the Indictment, each charging violations of 18 U.S.C. § 924(c). In exchange for his guilty plea to those two counts, the Government agreed to dismiss the substantive bank robbery counts and felon in possession of a firearm counts.

After placing Defendant under oath, the Court carefully discussed Defendant's options with him, including his rights to proceed with a trial in lieu of a guilty plea. Although Defendant acknowledged he had taken medication for migraine headaches earlier that morning, he stated that it did not "impair me from understanding what's going on" (Doc. # 44 at p. 5). Defendant further acknowledged that he reviewed the evidence that was disclosed during discovery with his attorney, and that he was "very satisfied" with the advice, counsel, and representation provided by counsel.

---

[3] The Court recognizes that all defendants, by entering a plea of not guilty at arraignment, as Defendant did herein, are asserting their innocence.

The record reflects that the Court took great care in questioning Defendant regarding his decision to enter a guilty plea and made sure he understood the possible consequences of the plea, including the impact of the total minimum mandatory statutory penalty of thirty-two (32) years for the two § 924(c) counts.  The Court also ensured that Defendant understood the provisions of his written plea agreement and sealed plea supplement, and that no other promises whatsoever had been made to him to induce him to plead guilty.

To ensure he understood the possible ramifications of the plea supplement, the Court convened a bench conference with the attorneys and Defendant.  The transcript of that sealed bench conference has been filed as docket entry 45.  During that conference, the following discussion occurred:

> THE COURT:     All right.  And did you go through the supplement with Mr. Fessler?
>
> DEFENDANT:     Yes, I did, Your Honor.
>
> THE COURT:     This, in essence, is telling the Court that you're going to cooperate in an effort to hope to receive a motion at sentencing which will allow the Court to sentence you below the 32-year minimum term.  Do you understand that?
>
> DEFENDANT:     Yes, Your Honor.
>
> THE COURT:     If you provide what is called substantial assistance in the investigation or prosecutions of other persons who have committed an offense, the United States indicates that they may file a motion pursuant to either the guidelines or the statute to allow the Court to sentence you below the term that we've already discussed.  The important thing for you to acknowledge here, Mr. Palmer, is that this determination as to whether or not you have provided substantial assistance and that qualifies for the substantial assistance motion is solely within the discretion of the prosecutor.  Do you understand that?
>
> DEFENDANT:     Yes, Your Honor.

THE COURT:        So if you believe, after perhaps giving a proffer with the United States or the agent, the FBI agent, that you think - - if you give a statement, let's say, after Court - - and I don't get involved in these motions until a motion is made, but how this comes up is, if you were to perhaps give a proffer statement that's just kind of being you sit down with an agent and your attorney and give information that you think is useful and, in fact, the agent decides that for whatever reason, they already knew about it, it was old, it was stale, it didn't help, they don't believe that you have earned a motion, but you do, I can't force the prosecutor or the agent to make the motion on your behalf. Do you understand that?

DEFENDANT:        Yes, sir.

THE COURT:        Nor can Mr. Fessler, as good of an attorney as he is. He understands that the discretion means just that. It's within the discretion of the prosecutor. Understand?

DEFENDANT:        Yes, sir.

THE COURT:        All right. Mr. Fessler, have you discussed that with him?

MR. FESSLER:      At length, Your Honor, we have.

THE COURT:        Okay. So absent a motion on your behalf at sentencing, I'm going to be bound by the statute and I'm not going to be able to sentence you below 32 years. You understand that?

DEFENDANT:        Yes, Your Honor.

(Doc. # 45 at p. 2-4). After ensuring that there was a sufficient factual basis for Defendant's guilty plea, the Court accepted the plea and scheduling sentencing for July 31, 2009.[4]

In this case, Defendant's plea was knowingly and voluntarily entered and was not the product of duress. Nor was it a hastily entered plea made with unsure heart and confused mind. For all of these reasons, this factor strongly favors denial of Defendant's motion to withdraw guilty plea.

---

[4] Defendant's sentencing was continued several times at defense counsel's request.

10

**5.      The Background of the Defendant**

This factor also favors denying the motion to withdraw guilty plea.  Defendant is a 36 year old individual who has completed some college work.  Despite his documented physical and mental issues, the undersigned found Defendant to be deliberate and thoughtful throughout his plea colloquy.  Simply stated, Defendant's background favors denial of Defendant's motion to withdraw guilty plea.

**6.      Defendant's Prior Exposure to the Criminal Justice System**

This factor also favors denial of Defendant's motion.  According to the PSR, Defendant has three separate felony convictions from the State of Indiana from 1993, 1996, and 2003.  Defendant is no stranger to the criminal justice system.  Based on his prior experiences with the criminal justice system, Defendant is familiar with how guilty pleas are obtained and the possible ramifications of entering a plea.  Although Defendant's prior convictions are not federal ones, and he was likely facing far less jail time in those cases, his experiences with the criminal justice system make it more likely that he understood the finality of entering a guilty plea.

Additionally, the fact that Defendant's attempts at cooperation will not likely come to fruition does not justify withdrawal of his guilty plea.  Defendant was specifically advised that there were no guarantees with regard to a substantial assistance motion, and the anticipated failure of the Government to make a motion on his behalf at sentencing cannot serve a basis for withdrawal of his guilty plea.

For all of these reasons, this factor favors denial of Defendant's motion to withdraw guilty plea.

**7.**     **Prejudice to the Government if the Motion is Granted**

The final factor also favors denial of the motion, albeit less strongly. Defendant argues he does not see how the Government could be prejudiced if he is permitted to withdraw his guilty plea. Ms. Myers, however, has already been finally sentenced, and has received the benefit of a substantial assistance motion. As a result, the Government's position at trial could be compromised to some extent. Additionally, the bank tellers who were victims of Defendant's brandishing of a firearm during the bank robberies would likely have to testify, bringing up painful memories of the robberies.

Nevertheless, because Ms. Myers would be available to testify if necessary, and the evidence of the robberies is likely still available, the prejudice is less than it otherwise would be if the cooperating co-defendant was unavailable. In the final analysis, consideration of this factor weighs slightly in favor of denying the motion.

For these reasons, there would be some slight prejudice to the Government if Defendant were permitted to withdraw his guilty plea in these circumstances.

**IV.**     **Conclusion**

Although the prejudice factor does not strongly favor denying Defendant's motion to withdraw his guilty plea, the remaining six factors weigh strongly against granting the motion. Moreover, because the record reflects that Defendant's April 2, 2009 guilty plea was neither hastily entered nor made with unsure heart or confusion, there is no basis for withdrawal. Because Defendant has failed to establish the existence of a fair and just reason to withdraw his plea under the applicable standard, and for the reasons stated herein; **IT IS ORDERED** as follows:

1.   Defendant's Motion to Withdraw Plea (Doc. # 41) be, and it is, hereby **denied**;

2.   Defendant's sentencing is scheduled for **November 23, 2009 at 11:00 a.m.** at Covington, Kentucky.

This 16th day of November, 2009.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\CovCrim\2008\08-66 MOO Denying Palmer Motion to Withdraw GP.wpd